Entered on Docket
January 21, 2011
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



The following constitutes
the order of the court. Signed January 21, 2011

_____
Stephen L. Johnson
U.S. Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>SANDY LYNN PENNY,<br><br>              Debtor. | Case No. 10-55073 SLJ<br><br>Chapter 13 |

**MEMORANDUM DECISION**
**ON VALUE OF VEHICLE UNDER 11 U.S.C. § 506(a)(2)**

**I.    INTRODUCTION**

In her chapter 13 plan, debtor Sandy Lynn Penny ("Debtor") proposes to "cram down" her vehicle lender's claim to the current value of the vehicle, pursuant to 11 U.S.C. § 506(a). The lender on that vehicle objects that the value Debtor places on the vehicle is too low. The court held a trial on January 10, 2011, on the issue of the vehicle's value. The court finds the value of the vehicle is $8,761.85.

## II. FACTS[1]

Debtor filed this chapter 13 case on May 14, 2010. In her bankruptcy schedules, she attributed a value of $4,175.00 to her vehicle, a Dodge Charger (the "Charger"). In her chapter 13 plan, she proposed to pay the creditor that amount.

On May 20, 2010, CitiFinancial Auto Corporation ("CitiFinancial"), the company which financed the Charger, filed a proof of claim seeking $19,476.04 and 4.00% interest, secured by the Charger. CitiFinancial also filed an objection to Debtor's chapter 13 plan, alleging that the value of the Charger was $16,850.00.

By the time of trial, the parties had abandoned their original valuations. The parties supplied the court with three possible ways to value the vehicle: debtor's estimate of value, the Kelley Blue Book value, and an appraisal of the vehicle.

Debtor testified based on her personal experience and familiarity with the vehicle that it should be valued in the "low $7,000" range. She identified a number of factors to support this conclusion. The vehicle's "check engine" light had been on for a long time, and her mechanic had not been able to tell precisely what the problem was. She testified that the vehicle's on-board diagnostic system presented a "P0300" trouble code, indicating a range of 15 possible problems with the engine. She also stated that the vehicle had 115,000 miles as of the petition date, and 132,000 miles as of the time of trial.

Debtor also offered an estimate based on relevant pages from the Kelley Blue Book. The Kelley Blue Book retail value for the Charger is $13,500.00. The Kelley Blue Book allows a $2,775.00 deduction for a vehicle with 110,000 miles and a $3,000.00 deduction for one with 120,000 miles. Averaging these two mileage figures to approximate the miles on the Charger supplies a retail value of approximately $10,500.00.

Finally, CitiFinancial presented testimony from Kirk Applegate, an appraiser who personally inspected the vehicle and completed a Vehicle Condition Report and a Repair Estimate.

---

[1] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

On the Vehicle Condition Report, the appraiser determined the vehicle was in "good" condition, with the exception of the hood, which was graded as "fair" due to scratches. Additionally, in the special comments section, he noted "Check Engine Light." On the Repair Estimate, the appraiser listed multiple repairs, including "check engine lamp reset," which he estimated would cost $99.00 to repair. The total repairs (including repairing the scratched hood) were estimated at $876.22. CitiFinancial's appraisal indicated a value of $10,132.00 after taking into account the repair costs.

### III. DISCUSSION

The question presented is how to measure the value of the Charger, consistent with the rules and purposes of the Bankruptcy Code and in view of the three separate values Debtor and CitiFinancial supplied to the court. The court notes that the valuation of a vehicle should be made as of the petition date pursuant to 11 U.S.C. § 506(a)(2). However, the parties did not supply the court with sufficient evidence to determine – as of the petition date – the value of the vehicle. Thus, the court can only make a conclusion as of the date of the trial.

In a chapter 13 case, the court can only confirm a plan if the value of property to be distributed in a chapter 13 plan equals or exceeds the allowed secured claim. 11 U.S.C. § 1325(a)(5)(B)(ii). The allowed amount of a secured claim is determined by the value of the property securing the claim. 11 U.S.C. § 506(a). Congress has enacted statutes for valuing a consumer's property in this context. According to 11 U.S.C. § 506(a)(2), the value of personal property "shall be determined based on the replacement value of such property as of the date of the filing of the petition." If such property was acquired for personal use, § 506(a)(2) further defines "replacement value" to mean "the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined." In addition, § 506(a)(2) requires that the retail value selected reflect the "age and condition of the property." Debtor bears the burden of proof on the issue of valuation under 11 U.S.C. §506(a).

The court does not give great credit to Debtor's estimate of value in the low $7,000s. She is undoubtedly familiar with the vehicle but the court cannot conclude based on her testimony that she has familiarity with the market for used vehicles like the Charger. Two options remain: the

Kelley Blue Book and the appraisal.

Several courts have considered how to value vehicles in the context of 11 U.S.C. § 506(a)(2). *See In re Morales*, 387 B.R. 36, 45 (Bankr. C.D. Cal. 2008) (summarizing numerous approaches to value). These courts have determined that "adjusting the Kelley Blue Book or N.A.D.A. Guide retail value for a like vehicle by a reasonable amount in light of any additional evidence presented regarding the condition of the vehicle and any other relevant factors" is an appropriate means of reaching retail value. *In re Morales*, 387 B.R. at 45.

The court agrees that the Kelley Blue Book is an appropriate starting point for a valuation analysis. The values it supplies are based on actual transactions occurring in relevant regional markets. They are admissible under Federal Rule of Evidence 803(17). The Kelley Blue Book is objective, serves the interests of standardization and predictability, and is cost-effective, which benefits the parties.

But the Kelley Blue Book retail values cannot be the final word. Retail value under 11 U.S.C. § 506(a)(2) and the Kelley Blue Book's suggested retail value have slightly different meanings. Suggested retail value under the Kelley Blue Book "assumes that the vehicle has been *fully reconditioned*," and only "represents dealers' *asking prices* and . . . the starting point for negotiation" between a consumer and a dealer. *Kelley Blue Book Auto Market Report* 4 (May 2010) (emphasis added). By contrast, 11 U.S.C. § 506(a)(2) requires the retail value to mean "the price a retail merchant *would charge* for property of that kind *considering the age and condition* of the property." (emphasis added)

The Kelley Blue Book value therefore must be adjusted for two things. First, it must reflect the actual condition of the car if that condition is not optimal.[2] Second, it must reflect the fact that the Kelley Blue Book value is the asking price for a retail sale, not the final price, as it is reasonable to believe that dealers do not sell vehicles frequently at the asking price.

The Charger is not in perfect condition. The "check engine" light problem obviously

---

[2] This evidence is often introduced by way of declarations, testimony, properly authenticated vehicle advertisements, and appraisal reports for the court to weigh in its factual determination. *See In re Morales*, 387 B.R. at 46.

affects the vehicle's value.[3] Debtor has tried to have this problem repaired without success. The appraiser's repair estimate seems geared to fixing the light – not necessarily the problem causing the light to turn on – as he indicates the problem would cost $99.00 to repair (part of a total of $876.00 in required repairs). If the problem could have been fixed with a $99.00 repair, Debtor would have done so. Indeed, she testified that she had taken the vehicle in for repair of the "check engine" light problem repeatedly with no successful fix. The appraiser limited his review of the vehicle to a physical inspection (and not a test drive), so it appears the appraiser may have underestimated both the challenge and cost of fixing the problem.

Although the court finds the "check engine" light problem justifies a downward adjustment of some sort, Debtor, who bears the burden of proof, supplied no evidence of how much that might cost. In light of the limited evidence presented by Debtor, the court will use CitiFinancial's $876.22 repair figure in calculating the vehicle's retail value. The court finds the appraiser's $99.00 cost for fixing the "check engine" light is too low. The court will substitute $500.00 for that figure, based on the difficulty Debtor has had in addressing the problem, the age and high mileage of the vehicle, and experience. The suggested retail value adjusted for repair costs is then $9,222.78.[4]

Once the court has deducted the repair costs necessary to bring a vehicle to a condition that a dealer could market and sell, the court must then make a final determination on the "price a [dealer] would charge." 11 U.S.C. § 506(a)(2). The Kelley Blue Book's suggested retail value reflects a dealer's asking price or first offer. It is not the price agreed upon by the dealer and

---

[3] Debtor argued under California law, the Charger cannot be sold until the "check engine" light problem is repaired because she cannot obtain a smog check until the light is extinguished. *See Smog Check Inspection Procedures Manual* (Bureau of Automotive Repair, August 2009), § 1.5.1 (Malfunction Indicator Light OBD I and OBD II).

[4] Calculated as follows:

| | |
|---|---:|
| Kelley Blue Book Value | $10,500.00 |
| Less: Repair Costs per Appraiser | - 876.22 |
| Plus: $99.00 for Engine Lamp Repair | 99.00 |
| Less: $500.00 for Revd Engine Lamp Repair | -500.00 |
| Total Value | $9,222.78 |

consumer, which lies somewhere between the dealer's bottom line and the Kelley Blue Book's suggested retail value. Since the parties have not offered any empirical evidence to demonstrate the average difference between dealers' asking price and the price they end up charging, the court will reduce the adjusted Kelley Blue Book retail value by 5%, to $8,761.85, which is consistent with the practices of other courts. *See In re Morales*, 387 B.R. at 42, 45.

The final possibility for valuing the Charger is the appraiser's report, which indicates a value of $10,132.00. The court finds this value to be too high under the circumstances. According to the report, the value is based on automotive guides, published resources, and a market analysis. However, the report indicates the market analysis was given more weight. To the extent that the appraisal is based on the Kelley Blue Book or comparable guides, the value would be overstated. The Kelley Blue Book value, as noted above, is based on an vehicle in optimal condition. In addition, the market analysis was conducted by asking local dealers how much they were charging for comparable cars. As noted, the asking price of vehicle is generally higher than the actual selling price. Finally, the adjustment for needed repairs only included a $99.00 charge for the "Check Engine" light problem, which the court finds is too low. If the estimate of that charge were $500.00, the court's value is only 14% lower than the appraiser's estimate.

## IV.  CONCLUSION

For the foregoing reasons, the court sets the retail value of Debtor's 2006 Dodge Charger at $8,761.85 for the purposes of § 506(a)(2). Counsel for Debtor may submit a form of order by ECF upload.